Good morning, Your Honors. May it please the Court, Henry Cruz for the petitioner, Marina Saucedo-Arevalo, reserve two minutes for rebuttal. Counsel, what we refer to sometimes as the $64,000 question in this case is why the exhaustive opinion in Barrios v. Holder doesn't answer this case. Well, Your Honor, I have four points on that. One, clearly Barrios dealt with a completely different statute with a completely different congressional goal than the statute we're looking at here. But the point of the case, though, that seems to me to carry over, and this is what I hope you'll address in your other reasons that are to come, the case distinguished between physical presence and status or state of mind. And the basic holding is that physical presence of a minor requires physical presence of the minor. And the exceptions to that rule have been developed in a situation where the minor has no ability, for example, to file legal documents or obtain the status that only the parents can do for them. But that basic holding that physical presence of a minor means exactly what it says, why doesn't that apply? Well, for several reasons. You know, when we're looking at phrases and terms, you know, I think we should be looking at the phrases in the context that those phrases are used. And in the context in this case, the phrase is used in a cancellation of removal statute, which doesn't simply require a physical presence. It requires physical presence of a continuous basis for 10 years. I think in Barrios, they did not have the luxury of legislative history interpreting the physical presence requirement. Whereas here, and I apologize for filing it just the day before, but I did file a 28J letter that further expounds on the history of the physical presence requirement under the statute we're looking at here. And in that history, it shows that Congress intended to provide this relief to aliens who had been residing here for a long period of time and had strong roots and strong ties to the United States. And that they considered this fact of the alien residing here for a long period of time as an intent to reside here in the United States. So one of our arguments is that, at least in the statute at issue here, there is an implicit intent requirement that would fall under the rationale of this court's imputation analyses in the other cases. And in one of the congressional reports, they specifically state that they have given this relief to individuals who intend to remain here in the United States. And one of the amendments that they were working on was in response to a Supreme Court decision that literally interpreted the physical presence requirement without any exceptions of departures. Congress said that's not what it meant. What it meant was people who intended to remain here, not simply purely physically present in the United States for a continuous period of 10 years. They could depart for short periods of time, depending on the reasons and the time that they were gone, as long as they still demonstrated that intent to remain here physically present and residing here in the United States. But Barrios extrapolates out of the prior cases. And I'm not sure I understand it as applied here. But it emphasizes that, in those cases, the minor was under the control of the parent. And you can't expect the minor to apply for a change in status or whatever. I don't understand, but I don't know what the record reflects, why a minor whose mother is in the United States has any presumed ability to cross the border. Let's suppose, I mean, some five-year-old is supposed to decide on her own to cross the border without the control of the parent. So my problem is that I don't understand the logic, the status. Presence is, in some sense, a status, the status of being present in the United States. To achieve that status, the mother came across and had been there on a continuous presence basis. This, your client, comes in when she's 15. Now, arguably, a 15-year-old has more ability, but technically she's still a minor. So when I was looking at this case, I'm wondering, well, why is it that we will impute, in these other cases, based on the theory that the minor is under the control of the parent? But Barrios doesn't seem to make that distinction. So, you know, I consider myself bound by the precedent, but I wondered if you have any insights as to why this case, how it gets around the Barrios, the bar, if you will. So I do appreciate the frustration in reading of the Barrios rationale in that respect as well, and I do agree that the rationale that Coriolis-Gaspar and his progeny has stated, they're not necessarily looking at whether there is some sort of intent requirement per se. It's whether, as your Honor stated, we should reasonably expect the minor, the unemancipated minor, to meet that requirement, whatever that requirement is. Well, whatever the logic of Barrios, the holding that I think is problematic for your side of this case is that the case actually defines what it means to be physically present in the United States, and although it's a different statute, the phrase is the same that appears in both, the phrase about physical presence, and it defines that to mean corporeally here, and this petitioner was not. So I guess it's that regardless of whatever else the reasoning is, the holding defining that phrase, it seems to me, would carry over, and I guess I don't understand, regardless of whether there's different legislative history or whatever, we've now defined that phrase. Well, I understand how that particular phrase, physical presence, has now been defined by Barrios. I guess I would just, I understand your Honor's point that regardless of the legislative history, but I think the legislative history does matter when you were defining terms from a statute. I mean, Congress can use terms, the same terms throughout the statute, but if there's indication through its intent and legislative history that they intended that phrase to mean something a little bit more, then maybe they've used it in another part of the statute. That's a hard bar to overcome, though, because we presume that the same phrase within the same statutory scheme continues to have the same meaning. Yes, Your Honor, I understand that. I guess it is difficult because there was no legislative history regarding the NACARA use of the physical presence requirement, whereas here there is. I would also point out that- Can I just get a clarification? Are you trying to argue that this particular statute, because of the intent element, comes under the prong of intent or status? In other words, it says status, intent, in other words. Yes. So you're saying, well, Baras was focused on status, but in this case we're focused on intent, and therefore you can impute the mother's intent. That is one of our arguments, Your Honor. And that informs or supplements the concept of physical presence. Where in the statutory text that we're looking at do you see anything about intent? Well, Your Honor, there is no mention of specifically intent in the statutory text, but there wasn't any mention of explicitly intent in the other texts that this Court looked at, such as in Cuevas, Gaspar, and Mercado, César. But it matters here because the phrase, physically present in the United States for a continuous period, et cetera, is in here without any reference that would suggest that it means anything other than what we said it meant in Baras. Well, I think if you look at other parts that are interpreting the physical presence requirement, such as the 90 and 180-day rule, where it shows that an alien who had been absent for more than 90 days or 180 days in the aggregate would cut off the physical presence requirement, I think that indicates that Congress wasn't specifically just meaning a state of being, but, you know, if an alien is leaving the country for under 90 days but comes back, there's still ‑‑ It doesn't matter why. Those statutes, again, have to do with corporeal presence here. They physically go out and they physically come back, and it doesn't matter why they go out or come back or don't. Well, I think Congress, again, you know, in legislative history, I think they didn't just think of the physical presence requirement as such. I think that they did include an implicit intent element for these aliens to show a long-term commitment to residing here in the United States. I do also want to make one more distinction. I know my time is running out from Barrios, and that's that in the regulations, as Barrios' court pointed out, they specifically explicitly required the child to independently meet the physical presence requirement, whereas here under the statute there is no explicit requirement provided. And so I think that's another way that this court can distinguish Barrios. Thank you. We'll hear from the government now. Good morning. Jocelyn Wright again for the respondent, United States Attorney General. Barrios forecloses petitioner's claim on the issue that's the only issue before the court, which is the meaning of physical presence. And as Judge Graber pointed out, physical presence doesn't carry with it a requirement of intent. Either you're here or you're not. To the extent that petitioner is relying on ambiguity in the statute, I think it's important to actually look at the statute. And the statute has pretty plain language. It says the alien has to prove that, let me just read it directly, the attorney general may cancel the removal of and adjust the status of an alien lawfully admitted for permanent residence if the alien meets the following requirements. And the first requirement is that the alien has been physically present in the United States for a continuous period of not less than seven years, immediately preceding the date of the application. Petitioner in this case entered the United States in June of 2002, and the notice to appear which ended her approval of continuous physical presence was served in October of 2006, which meant that she had only four years of continuous physical presence because of the application of the stop time rule. In order for her to independently qualify for physical presence, when would she have had to cross the border into the United States? How old would she have been? She crossed when she was 15, 2006. She was 20. She would have been 10 years old. Nine or 10. So how does that reconcile with Barrios, which says we have allowed imputation precisely because the minor either was legally incapable of satisfying one of the criteria or could not reasonably be expected to satisfy it independent of his parents. And I think Judge Fernandez's dissent in one of the cases recognizes that in those cases where they say that the minor is legally incapable of forming, for example, the intent to reside somewhere, intent was the key question. I believe you're begging the question. It says or could not reasonably be expected to satisfy it independent of his parents. How could she have, as a 10-year-old, independently decided to cross the border to join her mother at 10 years old? I don't know, Your Honor, but that's not the facts that we have here. She came when she was 15, and the NTA was served four years later. Under your theory, she would have had to do it when she was 10, right? Yes, assuming the NTA was still served in 2006. And I think the main point that I wanted to make while I'm up here is that to impute, in all those cases, they imputed the lawful permanent resident parent's status or intent to an emancipated minor. But in this case, and this is an important, significant distinction, neither petitioner nor her mother have lawful status in the United States. And so if the court carves out a rule that says that physical presence of your mother, of your parent in the United States is imputable regardless of that parent's lawful immigration status in the United States, then to some extent the court is creating a new avenue for aliens to immigrate into the United States. The mother will get it. The mother may not be lawful, but if she's here for 10 years, she would be eligible, correct? The petitioner in this case, do you mean? No, not the petitioner, the mother. Oh, the mother. Yeah. Assuming she met all the other requirements. But the point is her physical presence here was unlawful as well. But there may be. It's unlawful, but the congressional policy is if she meets, nonetheless meets 10 continuous years, that will be? For her to qualify, yes. But not for her to confer. Something wrong for her child to qualify? But not for her to confer immigration benefits to a child. There are no derivative benefits with cancellation of removal. And so, again, for her to be able to impute her physical presence in the United States, even though during that entire time she was here without authorization and she lacked legal status, that would be a backdoor and an end run around the quota system that Congress has put in place for the orderly and lawful immigration of immigrants into the United States. The mother's got a backdoor, right? She's. Well, yes and no. This is a question of whether more than just the mother, whether in the interest of family unity perhaps, if they're going to allow the mother to do that, backdoor as you've characterized it. For the mother to go ahead. Be qualified. Yeah. Yes, yes. But you don't want to extend it to her daughter. Because that would mean that there would be someone who has no entitlement to immigration status, assuming that all she can satisfy with respect to the cancellation statute is the physical presence requirement. She can cobble that with her daughter's eligibility requirements, and two ineligible people could then make one eligible person that could then get the whole family in. That is a backdoor and an end run around the quota system. Well, Congress allowed it for one, so it's not clear why they allowed it for the family. Yes, you can have the cancellation for the mother, assuming that it all happened. But at the same time, Congress said anyone else that you want to come in on a visa has to go through the quota system. Yes, family unification is important, but it doesn't trump everything else. Otherwise, Congress wouldn't have enacted all of the other requirements for an alien to be eligible for cancellation of removal. If all they wanted was to say, if you're here and you want your children to be with you, then you can have relief. That isn't what they said. They enacted and they drew the line as they saw fit. And in this case, Petitioner simply hasn't met the requirement of physical presence, no matter how sympathetic her case may be, unless the Court has any further questions. I don't believe so. Thank you. Mr. Cruz, you may have one minute for rebuttal. Thank you, Your Honor. I think an alternative argument we have is, apart from whether there's intent in the statute, I think as Judge Fischer was pointing out, and it stated in Mercado de Azueta, that the controlling factor in the imputation analysis isn't necessarily whether there's an element of intent in the statute, but whether it's reasonable to expect the unemancipated minor to meet the requirement under the statute. And they specifically noted that it doesn't matter whether, technically speaking, that minor could meet that requirement. So technically speaking, a minor could illegally cross into the United States and be physically present here for ten years. But when we're talking about a minor in the situation of Ms. Saucedo, such as when her mother left, I believe she was about five or six years old, it wasn't reasonable to expect a five or six-year-old to cross to the United States illegally and be physically present here for a full ten years. I think the mother here, as the record indicates, always intended to bring her child, which is Ms. Saucedo, which is her first child. She had other children here in the United States after she got here, and she eventually did bring Ms. Saucedo here to the United States, and Ms. Saucedo continued to reside with her mother here in the United States until she was approximately 19 years old. And so I think that is, as Mercado de Azueta is clear, that's the controlling factor when we're talking about this imputation analysis. I think that the... Would you sum up briefly as your time has expired? Yes. I think one thing also to consider is it's not just legal residence that imputation has been applied to. I think the agency has a long history of applying imputation in other contexts where it doesn't deal with legal residence, such as firm resettlement in asylum cases, and grounds of inadmissibility, such as a parent who has committed a ground of inadmissibility, that would be imputed to the child as well. And I think, lastly, that the overriding goal of family unity and high priority on a parent-child relationship, they were equally applicable in the other cases in Cuevas-Gaspar and its progeny, and that those aliens could have come through the quota system as well, but that wasn't the overriding factor. The overriding factor was the intent of the statute that they were looking at, and the intent of the statute here that we're looking at is the same as the statute in cancellation of removal in Cuevas-Gaspar and its progeny in reuniting family members and avoiding undue hardship for long-term residents. Thank you, counsel. We appreciate the helpful arguments of both counsel, and the case is submitted.
judges: Marshall, Graber, Fisher